Good afternoon. We'll take up our first case for the afternoon, actually the only case before this panel, the continued matter argument in Sean David Woodson v. Richard Colajezzi et al. May it please the court, my name is Megan Kelly and I along with my co-counsel Kyle Noko represent the appellant Sean Woodson. We'd like to reserve two minutes for rebuttal. That's granted. Thank you. There are three issues before the court. First, I will address the access to courts issue. Next, my co-counsel will address the First Amendment and the Sixth Amendment issue. Oh, wait. There are more issues than that. In fact, you briefed more issues than that. We've asked you to address the jurisdictional issue here. Yes, Your Honor. I'd like to turn to that first, if that's okay. Thank you. We know in our supplemental brief that Mr. Woodson was recently transferred from FDC to FCI Farrington, and although transfer in some instances can moot a prisoner's claim for injunctive relief, it does not here for a few reasons. First, the policy articulated in the record, pursuant to which Mr. Woodson has suffered an injury, is articulated as a BOP policy, and that policy states that BOP is not required to pay for photocopies of state court data. This may sound like a dumb question. Maybe it is. What is being appealed here? I mean, are you appealing the dismissal of the underlying claims, which the pro se notice of appeal suggested, or are you appealing the denial of your motion for preliminary injunction, which was suggested in some of the papers later filed, or both? I'm not clear at this point, after reviewing all of the papers, just what claims are subject to this appeal. The latter, Your Honor, the denial of the preliminary injunction, and there's a few reasons for that. First, Mr. Woodson's complaint below was dismissed without prejudice, and he attempted Well, only as to one of the claims, right? Some claims were dismissed with prejudice, some claims were dismissed without prejudice. Yes, Your Honor. But he nevertheless filed a notice of appeal that suggested or stated that he was appealing from, appealing each and every aspect of the district court's order, right? And that's true, Your Honor. However, this court's order specifically asks us to address the denial of the preliminary injunction. And in addition, he did file a motion for leave to extend the period to amend his complaint. Okay, and thank you. That does clarify it for me so far. But at that point, how do you have a basis for appealing a preliminary injunction which necessarily derives from some underlying substantive claim? Don't you have to have an underlying claim which provides a basis for injunctive relief? Because that's all an injunction is, it's relief. It's not, in and of itself, a cause of action. The access to courts issue certainly provides that, Your Honor. He had a claim to, this is getting to the merits, that was dismissed as untimely to Delaware Supreme Court, and that's the basis of his access. But that case was dismissed in the district court, and you're not appealing from that portion of the order, are you? We're appealing from the portion of, we're appealing from the preliminary injunction. But the preliminary injunction require a showing of a likelihood of success on the merits. Yes, Your Honor. If you are not complaining that the district court said that your access to courts claim didn't even state a cause of action, how can you maintain before us that it was wrong that you had a likelihood of success? We are arguing that, Your Honor. As to the access to courts issue, and as the First Amendment issue, and the Sixth Amendment issue as well, we are. The First Amendment issue, as I see it, stands alone because you had the right to replead, and that hasn't happened yet. Now, the Sixth Amendment issue, the trial court, well, your colleague is going to get to the Sixth Amendment issue. Sure. But if you're not complaining that the dismissal is wrong, then are you conceding that you hadn't stated a claim, and therefore, how could you have had a likelihood of success on the merits? No, Your Honor. The district court did err in looking, in particular, as to this issue, the access to courts issue. She did not, for instance, look at the fact that the prison mailbox rule did not apply in Delaware, where he submitted his appeal. Well, let's assume, for the sake of argument, that we can address the access to courts issue and the injunction with respect to it. There is no showing of an actual injury here, is there? Your Honor, we would argue that there is. What is the actual injury? The actual injury occurred when his appeal to the Delaware Supreme Court was dismissed for untimeliness. But he was complaining, well, it was dismissed for? There was no jurisdiction. No jurisdiction. Right. It was a non-final order. The non-final order pertained to his Third Circuit appeal. This we're talking about is the appeal to the death. Well, all right, but it was for writ of quorum nobis, which isn't recognized in Delaware, is it? I mean, how can you say that's actually prejudicial? I see my time has elapsed. Let's put another three minutes on, please. He articulated it as a writ of quorum nobis, but really, it's better construed as just a post-conviction relief claim. But it's an untimely post-conviction relief claim. But the untimeliness, Your Honor, was caused by the officials. Well, you're complaining about an April 19th to April 23rd situation. Yes, Your Honor. Even if he had been able to file, you know, on April 14th and wouldn't have had a problem, it's still past the one year, is it not? It is. However, there are exceptions under Delaware law for the one-year deadline. And as long as he could make an argument under those rules that that applied, we would have still an arguable claim. And that's really that's all. Well, it's not an arguable claim. It has to be actual injury. So don't you have to have more than an arguable claim? No, that's all that's required by Christopher V. Harvey, Your Honor. It just requires that there is a specific arguable claim lost. The actual injury occurred when it was dismissed as untimely. And then the next element is causation. And that occurred when the prison officials delayed photocopying his appeal, and that was received late by the Delaware Supreme Court. But Christopher V. Harvey makes clear that that particular claim just needs to be an arguable claim. It's not for this court to relitigate the merits of that particular claim over again. So as long as there is a non-frivolous argument to be made on appeal, that would satisfy the elements of an access to courts issue. Thank you. Thank you. We'll hear from you in rebuttal. May it please the Court. My name is Kyle Inouye. I represent the appellant, Sean Woodson. And just to turn to the Court's questions about what is on appeal here, we are challenging that the district court did err on the merits of Mr. Woodson's claims. So appealing that ---- I'm missing something. That is not what I understood your colleague to have just said. We are challenging that the district court did err on the merits here. That's why Mr. Woodson has shown a reasonable likelihood of success. That would satisfy the requirements for the preliminary injunction. All right. Which were the claims which were dismissed on the merits? The access to courts ---- I'm sorry, dismissed with prejudice. The access to courts claim was dismissed with prejudice, whereas the First Amendment claim was dismissed without prejudice. Now, clarify if you would, please. Have you decided to stand on your complaint with respect to the First Amendment claim that was dismissed without prejudice? Is our position that Mr. Woodson did not elect to stand on his complaint based on his attempt to amend the original complaint and also the order from this Court, which my counsel had already mentioned, that demonstrates that his intention was to amend the record. So that's not final? No. As well, the preliminary injunction could still be granted by this Court because Mr. Woodson has demonstrated a likelihood of success in his First Amendment claim and the Sixth Amendment claim. Under the First Amendment, prisoners have privacy protections for the legal communications, which this Court has recognized in both Jones v. Brown and Biergau v. Reno. And in both those cases, the Court was concerned about a chilling effect when prison officials can review prisoners' legal communications outside of the prisoner's presence. And here, that concern is met because the prison officials here do not dispute that they reviewed Mr. Woodson's materials. Well, they specifically know they did because Bacon then reported him for getting someone else to do legal work for him. Isn't that correct? That is correct, Your Honor. But also, I would point the Court's attention to Tracy Longacre's declaration where she acknowledges that Education Department officials had refused to make copies for Mr. Woodson's legal documents because they appeared to be part of a state litigation rather than his ongoing federal criminal case. And they would not know whether those documents were related to state or federal proceedings unless they conducted some type of review. And Mr. Woodson was told about this review and that this review was conducted outside of his presence. And the District Court erred because it did not focus on this important factor. In this Court's previous precedent, it wasn't about necessarily the specificity of the types of documents or whether the documents were a motion for summary judgment or a notice of appeal. The critical factor here was that they're legal documents. And once they're legal documents, it triggers this First Amendment protection and this concern about a chilling effect that is present when prison officials review this type of legal communications outside of Mr. Woodson's presence. Speaking of specificity, where in the complaint does your client lodge specific allegations against the named defendants? As it relates to this issue. Your Honor, in the initial complaint, he alleges that Mr. Colagesi personally reviewed his documents along with Ms. Bacon and Ms. Longacre, and that's on pages 48 to 50 of the Joint Appendix. And then he also alleges that Mr. Patton acquiesced to this review policy, had knowledge of this review policy, that he had informed these officials upwards of 15 times of these ongoing constitutional violations, yet he failed to address them or correct them in any way. And the officials here do not dispute that this review took place outside of Mr. Woodson's presence at all, so that in itself would satisfy a proven constitutional violation of Mr. Woodson's First Amendment rights. But here, not only did the officials violate Mr. Woodson's First Amendment rights, but they also violated his Sixth Amendment rights. Now, the district court didn't really discuss that, did it? No, Your Honor. The district court found that Mr. Woodson failed to state a claim, but the district court erred in the access to courts issue and also the Sixth Amendment issue, because as the Second Circuit has recognized in Benjamin v. Frazier, the criminal context presents a different set of concerns for the actual injury requirement. In fact, it does not make sense for criminal defendants to have to prove actual injury. For purpose of Sixth Amendment. Yes, Your Honor, because the actual injury requirement requires that the prisoner demonstrate the loss of the ability to pursue a non-frivolous claim. And criminal defendants are not necessarily trying to pursue civil claims. They're necessarily trying to defend themselves against a criminal prosecution. As a result, it would be unclear what actual injury would require in the criminal context. Now, the problem is we have non-finality as relates to the merits. Isn't that correct? I'm not sure if I understand your question. We have a lack of finality. You're saying you are standing, you're not standing on your complaint, correct? You want to amend with respect to the First Amendment. Is that correct? Yes, Your Honor. We just want to appeal the preliminary injunction. Okay. But then you're saying it's non-final and the merits is non-final. But you're actually asking us to overturn the merits, are you not? Yes, Your Honor. But we can't do that because the merits aspect is non-final. You're getting here through your right to appeal the denial of a preliminary injunction, correct? Yes. In fact, Mr. Woodson, if I recall, filed coincident with his notice of appeal a pro se motion with the district court seeking time to amend the complaint, didn't he? Yes, Your Honor. And that demonstrates his intention not to stand on the original complaint. It certainly does do that. But then why pursue an appeal? Why not pursue a process to the district court? Because of these ongoing constitutional violations, Mr. Woodson was seeking a preliminary injunction to prevent President officials from violating his Sixth Amendment rights and his First Amendment rights. Well, let's say what's the place to get the injunctive relief? Yes, but the district court had dismissed his claims with prejudice or without prejudice, so he was seeking to appeal that dismissal. Well, through piecemeal litigation, through an appeal of certain of the claims, but through an amendment as to another portion of the complaint, I'm not understanding just what the posture of this case is or what it should be. The posture of this case, Your Honor, is that Mr. Woodson is challenging on the merits that dismissal of his claims. The plaintiffs have argued that all the claims are before the court. But it's not final. Your merits appeal is not – you still have a case going on. You have the ability to appeal the injunction. And if you wanted to say we showed a likelihood of success on the merits because this is what we showed the district court and they were therefore wrong, but you can't say the dismissal was wrong as the heart – that's the heart of your appeal. And that's something that we can't really address. Now, if you said separate and apart from the dismissal, we showed a likelihood of success, that's something else again. But if all you have to show the likelihood of success is what was dismissed, it makes it – our hands are a little bit tied, it seems to me. Well, if the court accepts the appellee's position that all the claims are before this court, then Mr. Woodson's damages claims would also be before this court, which this court could offer relief for those claims if Mr. Woodson had proven those claims and the district court erred in its decision on those claims. Well, if we affirm the district court as to the denial of injunctive relief, you can then proceed with your case as to your reasserting your First Amendment claim. And if that's denied, then you can appeal those other dismissals, can you not? Yes, Your Honor, but if the court decides that now, that would avoid the piecemeal litigation that this court is concerned about. But you also, if that's the case, can say to the court, if this has been sent back, we now want a hearing and I'm going to show you the likelihood of success and I'm going to re-request my preliminary injunction. And then you'll have a complete record on which your injunction can therefore be reviewed. Right now, what we have before us on the appeal of the injunction, likelihood of success on the merits, we don't have anything. We don't have anything. And even if we were to address the merits of the dismissal, we would say it shouldn't have been dismissed, but how do we then jump from state of the claim to likelihood of success? Do you kind of see where? Yes, Your Honor, I see my time has expired. You can respond to the question. I'm going to briefly conclude. If this court is concerned about the record, this court should allow Mr. Woodson to further supplement that record by remanding this case rather than outright dismissal of his claims. We wouldn't dismiss the claims. We would affirm what the district court did vis-a-vis the preliminary injunction, but that wouldn't involve review of the underlying claims because that part of the case isn't on it. Counsel, two quick questions. Number one, your blue brief doesn't address the merits, well known, of the underlying claims, but rather the basis for injunction relief, right? Your Honor, it does address the merits of the underlying claims of the access to court claim and also the first one to claim and the sixth one. Will you tell me where? Yes. On page 22, that. But the issue is framed as reasonable likelihood of success on the merits, which is one of the elements for injunction relief. Yes, so Mr. Woodson has essentially proven that claim on the merits, so that would mean that he would have a reasonable likelihood of success in that claim. Well, you're equating that he stated a claim that should have withstood dismissal with likelihood of success on the merits? Success? Yes. All right, second question. You were writing your brief based on what you believed that this court, through an order, had directed you to do. That's correct. That is true. Thank you very much. That is a problem. All right. I'll just arrest the issues on rebuttal. Not this panel. Well, I think I might have been on it. I think I might have been on it. Yeah, I think I missed it. Your Honor, may I please report? Assistant United States Attorney Paul Coffman for the individual federal defendants. Mr. Coffman, you too, in response to our request, filed a supplemental brief relative to the appellate jurisdiction issue here. Do you really, really, really think we have appellate jurisdiction here? I really, really, really think that the district court thinks you have appellate jurisdiction, Your Honor. Judge Roof denied the motion for extension on the basis of a lack of jurisdiction, a decision which only makes sense if she believes that everything was up. And as a typical matter, I think that this court takes people at their words, litigants, pro se, and otherwise. And when someone says, I'm appealing, quote, each and every aspect of the above cited action that was preserved, and they've preserved all aspects of that action, that's an appeal of everything. That was the notice of appeal, and that certainly sets things forward, going forward. But as we all know, claims can be waived. Claims can be expressly dropped. So what happened here? I think what happened here, Your Honor, is that a pro se litigant filed something that he may or may not have understood and may or may not have meant, and that there have been different interpretations of that filing by this court, by the district court, by appellants and appellees, and it's going to be the responsibility of this court to figure out what actually was included by that notice. He was saying that if he hadn't filed the notice of appeal, but had only filed the pro se motion for the district court, the district court, I'm sure, would have acted in good time on that motion, and we wouldn't be here at least in this posture. I think that that's exactly right, Your Honor. Well, maybe we should, I mean, the district court took it that the notice of appeal was that he was standing on his complaint. That's a reasonable view. Why should we not take the whole matter? And why should we not say that because no actual injuries, because the district court didn't address the Sixth Amendment claim at all, and it probably requires no actual injury, and because the First Amendment claim was probably sufficient under our case law, especially having to do with outgoing mail, let alone with ingoing mail, why don't we, why shouldn't we reverse the district court on those two cases, those two claims and send it back and let this proceed? Well, Your Honor, I don't, I wouldn't accept the court's premise on either of those points. I think with respect to access to courts. But you would accept that we could take jurisdiction? Yes, Your Honor. You can take jurisdiction. I think that that's what the notice of appeal invites you to do. Do you think that Mr. Woodson stood on his complaint? Don't we require more for standing on one's complaint than what occurred here? And, and, given the procedural wrinkle that occurred before the district court, and as even appellant has suggested, how can we say that Mr. Woodson stood on his complaint when coincidentally, with the filing of the notice of appeal, he filed a motion in the district court to proceed? I think, Your Honor, that there are three possibilities. Either he stood on his complaint with respect. That's been one of the problems with getting our arms around this case. There are numerous possibilities. It is a problem that I assure you has been shared by the litigants, Your Honor. One possibility is that he appealed both preliminary injunctions but nothing else, leaving both the underlying Sixth and First Amendment claims in the district court, one with prejudice denied, one without prejudice, awaiting a final decision for him to take both up. One is that he appealed everything, and one is that he took a middle path and appealed the claim that had been denied with prejudice. So do we pick door number one, door number two, or door number three? Your Honor, I think that the basic principle is that courts take appellants at their words. His words are very clear. He is appealing each and every aspect. That's our position. If Your Honors take a different position and only accept the preliminary injunction claims, I think that the affirmance is even more strongly supported by the record. Your Honor, it was interesting for me to listen to Stenoco making the argument. He made a move there that I think that appellants have made throughout this, which is moving legal mail cases into a broader legal document case. In the legal mail cases, this Court's jurisprudence in Jones and Fortroy has focused on the possibility of chilling speech and has focused on the possibility of violation of some kind of privilege. But what's pleaded here is only documents and communications that are being filed with the Court. That's what he has to have copied. He has to have things copied so that he could comply with Court rules. Well, but this is pro se, and he has said that someone was reviewing their mail outside of the presence. We have case law saying that has a chilling effect, that shouldn't be done. How should it be thrown out on the back? I mean, he doesn't – how does he know which documents were reviewed outside of his presence? It was outside of his presence. Whatever he gave had to do with his cases. And that is precisely, Your Honor, why Judge Roof asked him to say what was reviewed. Well, how does he know it was outside of his presence, for heaven's sake? At least it should proceed a little further for deposition. Let him prove it. We're talking about just stating a pro se case here. Well, Your Honor, I don't think that there's a First Amendment jurisprudence on everything. And I think that the record shows not that everything that he mailed was reviewed, but that those things that he asked to have copied were reviewed. Those things that he asked to have copied to comply with court procedures. Court procedures only apply to filings, Your Honor. Those are going to be public documents within minutes. There is no record to suggest that he went to stand by counsel, to seek counsel, to consult. I mean, even so, the regulation says, the institution shall staff upon an inmate's request at time scheduled duplicate legal documents. If the inmate demonstrates more than one copy must be submitted, the court duplication cannot be accomplished by use of carbon paper. Legal documents. Right, Your Honor. And all they were doing was looking to see if they were, in fact, legal documents. We don't know that. He has at least alleged a case. Has he not? He has not alleged that anything that was not a legal document was reviewed. In fact, his allegation is, they reviewed my legal documents. That's what he is saying. And they reviewed them to determine if they needed to be copied. It is the responsibility of the Bureau of Prisons to determine whether a copy is justified or not. They're not to be copying things that are not legal pleadings, that are not required by the court as the regulation that Your Honor just read said. But that's a matter of defense to my mind. Is there any case law that really speaks to the issue about the incarcerated person's right to privacy regarding mail as a general matter, as opposed to the legal documents to which you're adverting? Or is it all in one sort of indistinguishable group? I think that there is some distinction that is drawing, Your Honor. Abujamal was a case about that. Nasir was a case about a private correspondence involving a romantic relationship. And in those cases, the court actually upheld the restriction in the case of Nasir. It did not uphold it in the case of Abujamal because it had not been evenly applied in the court's view. But that happens on summary judgment, does it not? It happens on summary judgment. Nasir is a summary judgment case, Font was a summary judgment case. You're right, Your Honor. And those have established a set of rules. And if you only plead that what we looked at, what the Bureau of Prisons looked at, was to figure out whether these were legal documents that needed to be copied, that doesn't state a claim. That's a demur in the old common law terms. It's not a summary judgment. What if he pleaded that they were looking at personal mail? Your Honor, that might be a case. It's not a case I think we have here. And where in the record can we be clear that he was adverting only to legal documents? Your Honor, we would focus your court's attention always on the first amended complaint, the second amended complaint. No, I'm asking you to point it out to us. I'd have to look through that, Your Honor. I'd have to supplementally brief on specifically where each pleading is. But I think that the record is clear from the nature of the claims and, in fact, from the appellate briefing on the matter, that he's talking about legal claims. That's why Jones is implicated. That's why Fortrory is an important case for these purposes. But those are summary judgment cases. Give me a case where it's dismissed where he avers that legal documents were being reviewed outside of his presence and, therefore, for lack of specificity. I'm not aware of one, Your Honor, that does that. I'm not aware of one that refuses to do so and holds it off for summary judgment. As far as I know, that issue has not been raised. But I would suggest to the court that if what is pleaded and what is taken is true, as I suggest it is, is that he was having his legal correspondence reviewed for purposes of determining whether it needed to be photocopied and that that was the only purpose of the review, which is what is alleged, then that is a case that the court can take, does not need additional facts. That either does or does not state a claim that we respectfully suggested under the jurisprudence of this court, which focuses on the privacy interest and on the privilege interest, that photocopies and looking at photocopies in advance of things that are being filed in court have neither. But outside of his presence is a key factor, is it not? It is, Your Honor. And that is an area in which we would say that the court needs to carefully consider the practicality and the ripple effect under the court's jurisprudence of having to have an individual travel to each ward of the prison. Remember, Your Honors, that at the FDC you have approximately 120 inmates per wing. You often have one corrections officer for them. Sometimes there's a counselor with that person. We respectfully suggest that if that person is spending their time reviewing all that or if you have the people in the copy room traveling throughout the building, that that's just not a practical way to address your prison. But isn't it the point that the person should be able to be with the person who's reviewing the mail because it's their mail? Again, Your Honor, the focus here, Your Honor, keeps moving and I think the appellants do too, to mail. This isn't mail. These are pleadings that are being photocopied to be sent out. So they can be mail. Yes, Your Honor. In that sense, they're mail. In that sense, everything would be mail. But we would suggest that the fact of their public nature reduces any chilling effect. It's going to be published in court. Reduces any privilege to zero. There can't be a privilege in a public filing. So what we're talking about is a document that doesn't have the inherent privacy and constitutional interests that this Court has found problematic. That's not Jones. That's not Jones. It's not Fortroy. It's not any of the court's jurisprudence. I'm not aware of any case that neatly tracks these facts. I'm not aware of any case, in fact, even in the mail jurisprudence, that tracks the question of whether an individual who claims to be indigent and claims to be unable to provide for copies out of the prison account. And if I may just briefly correct the record as an aside, Your Honor, I believe it was Mr. Woodson who was writing pleadings for cash and for consideration for other inmates, not the other way around. And that's in the appendix at 148. So if he's busy doing that, you have a concern that he's going to be present a lot of days looking at the mail, looking at the documents being copied? Your Honor, in his criminal case alone in the past four years, he has filed over 150 documents. He has filed eight times in Delaware state court. He has filed over 25 times in Maryland court. He has filed eight separate civil actions, three of which at least have been held to be frivolous, including members of this panel. He's filed five appeals. He's filed over 200 times in the last four years. He's averaging more than one filing a week. But that's not a matter of record on this case, is it? Is that something we should consider on deciding whether the district court was right to dismiss it? I think that that's something that Your Honor certainly should consider for purposes of  Was it before Judge Roof? Was this presented as evidence in the motion to dismiss? It was not, Your Honor, but for purposes of considering whether he has a likelihood of showing a success, likelihood of success at showing that he has been blocked in his access to the courts, the fact that he has filed 200 times or more in the last four years is something I think that this court should certainly consider. How? I mean, either it has to be in the record before the district court, or you have to go through appropriate process to have us take judicial notice of it, which in certain limited circumstances an appellate court may do. Then I would orally move, Your Honors, to take judicial notice of the dockets of the court, of the cases that have been put before the court in the related cases file, as well as We're not going to do it orally, and I, you know, if you want to take pains of supplying it to us, you can. Let me ask you a question. The Sixth Amendment clearly was not ruled upon by Judge Roof. Was it? The Sixth Amendment claim? Your Honor, the Sixth Amendment claim, I personally, and I think that the court may have difficulty distinguishing the Sixth Amendment claim from the First Amendment claim, certainly on the pleadings that were before the district court. So I don't know that they're analytically distinct. Well, we talked about interference with communication with counsel, so that's different. Your Honor, again, the only communications that were provided, were referred to with courtesy copies of things that were being filed in court. That doesn't implicate the Sixth Amendment rights in the same way. It certainly doesn't implicate in the Jones and Fortoura sense. And so we would respectfully suggest that No, but in the Benjamin v. Frazier case, would it not? If this court were to accept Frazier, Your Honors, I think it might. But in that case, again, I think that there has to be some showing that that led to something. In there, you had, again, counsel communications. That case was about principally, as I recall it, about whether individuals would be given sufficient time or be carefully allowed to have the consultations they needed with counsel. That's not our case. Our case is he is seeking simply to send counsel a copy of the same things that he is sending to the court for filing. Well, it's like a lot of pro se complaints. We're not quite sure what we have. In that case, Your Honor, are we sure that he's representing himself as opposed to having counsel represent him? He is absolutely representing himself. He has represented himself in every proceeding. He represented himself successfully in his retrial. So then his Sixth Amendment claim has to necessarily involve him not being able to represent himself adequately. That's correct, Your Honor, and I would suggest that the record, and this, Your Honor, in the District of Delaware criminal case, part of that docket was included. The docket as of the date in question was included as a part of the appendix here. The rest of it can be found by the court, obviously, or we can move for judicial notice formally. But we would respectfully suggest that a record of 150 filings and successful representation and an acquittal is not a Sixth Amendment problem, and I believe I'm out of time with that, Your Honors. All right. Thank you. I believe you reserved some time for comments. First, I just wanted to address the existence of claims that are on appeal here. First, it's our understanding by appealing the preliminary injunction, Mr. Woodson was attempting to have those claims decided on the merits as well. And we were also by the court this, that Mr. Woodson was challenging his preliminary injunction. So we would not want our client necessarily punished for that. All right. So you're saying, and I think your colleague remarked, you filed a notice of appeal. You want to appeal everything that was decided by the district court, correct? That's what we believe, Mr. Woodson. And then by asking for an extension, the district court probably didn't realize that by filing his notice of appeal as to everything, he was foreclosing his ability to go back there. Yes, Your Honor. As a pro se litigant, Mr. Woodson has assumed to know all of the legal technicalities. But we should take him at his word when he files a notice of appeal and says, I want everything to be reviewed. Yes. Yes, Your Honor. So he won't have any further, if we affirm, he can do nothing more in district court. Yes, Your Honor. And if I could quickly move to the legal mail issue. This court in its previous cases in Jones and Bierku versus Reno, those involved incoming court-marked mail that was public documents, yet they still received the First Amendment protections afforded and the chilling effect that was considered in both those cases. So it does not necessarily matter whether the documents were confidential or they were public court documents. So if he files next month 6,000 documents, he has a right to be present when the prison personnel are reviewing those 6,000 documents to decide whether some need to be copied and some don't. Your Honor, at his current position, he probably will not file 6,000 documents, but the prison still has to meet the standards. All right. Let's say he files 1,000 pages. Does he have a constitutional right to sit there while prison personnel review 1,000 pages to ascertain which ones, if any, need to be copied? Your Honor, if the court is concerned about this, the standard that the court uses from the Messier versus Morgan case concerning outgoing mail where if the volume becomes so much that it implicates a substantial government interest, then perhaps that review would be justified. However, here in this case, that review wouldn't be justified. I thought that was the purpose for the copying policy. The copy policy existed for that very reason. Well, this Court has now recognized the reason. They will copy things that should be copied, and they're not going to copy things that don't merit it. That's true. However, it still needs to meet the tests of this Court established in Morgan that there's a substantial interest, penological interest, implicated. And that is not present in this case. Perhaps if it reaches its term. Well, we don't know that. We're at the dismissal stage. I mean, you'd get to that. If the case weren't dismissed, then you'd find out what the interest was. You'd find out exactly how many pages. But we're not there, are we? Well, it's our position that we're not. But if the Court's concerned that on remand, Mr. Whitson could detail more about future pleadings if that's allowed. And then it also doesn't matter necessarily that the documents itself were not necessarily in an envelope ready to be mailed. The documents themselves needed to be copied so that it could be sent to the court to comply with court rules. So that in itself is legal mail. It does not matter necessarily that it wasn't in an envelope itself. And then if I could quickly move to the access to courts issue. The other litigation mentioned is only relevant in the sense that it would implicate his ongoing need to have the injunction or to other forms of redress based on interference with his rights. And that's similar with the Sixth Amendment issue as well. The ongoing criminal appeal that he has still makes that a live claim. Thank you. The case is well argued. And thank you, Mr. Frankel, for having your students argue. We were as tough on you as we would have been had you had your full credentials. You are still students, is that correct? Both of you? We're graduates. Are you graduates? Okay. Have you been to the bar yet? We graduated a week ago. Okay. Well, congratulations on that. And thank you very much for adjusting your schedule. I know you probably had to do this while everyone else was vacationing or studying for the bar. It's a hell of a way to spend a post-graduation vacation. Sorry to do that to you, but we appreciate your parents. Thank you, Mr. Frankel. Thank you, Counselor.